**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

COLETTE VANCE,

        *Plaintiff*,

v.

COMMISSIONER OF SOCIAL SECURITY,

        *Defendant*.
_____/

CIVIL ACTION NO. 1:16-cv-13542-PTM
MAGISTRATE JUDGE PATRICIA T. MORRIS

## MAGISTRATE JUDGE'S OPINION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT (Docs. 10, 14)

**I.    OPINION**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned Magistrate Judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff Colette Vance's ("Vance") claim for a period of disability, Disability Insurance Benefits ("DIB") under Title II of the Social Security Act 42 U.S.C. § 401 *et seq.*, and Supplemental Security Income Benefits ("SSI") under Title XVI, 42 U.S.C. § 1381 *et seq.* (Doc. 2). The matter is currently before the Court on cross-motions for summary judgment. (Docs. 10, 14).

On May 13, 2014, Vance filed concurrent applications for DIB and SSI, alleging a disability onset date of January 1, 2011. (Tr. 121-33). She later amended this date to August 7, 2014. (Tr. 25). The Commissioner denied her claims. (Tr. 45-70). Vance then requested

1

a hearing before an Administrative Law Judge ("ALJ"), which occurred on December 9, 2015 before ALJ Jerome B. Blum. (Tr. 23-44). The ALJ's written decision, issued February 3, 2016, found Vance not disabled. (Tr. 9-22). On September 13, 2016, the Appeals Council denied review, (Tr. 1-4), and Vance filed for judicial review of that final decision on October 3, 2016. (Doc. 1).

     **B.**     **Standard of Review**

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed

even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

C. **Framework for Disability Determinations**

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy

> that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

Under the authority of the Social Security Act, the SSA has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is at least eighteen years old and has a disability that began before age twenty-two. 20 C.F.R. 404.350(a) (5) (2013). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The regulations provide a five-step sequential evaluation for evaluating disability claims. 20 C.F.R. § 404.1520.

### D. ALJ Findings

Following the five-step sequential analysis, the ALJ found Vance not disabled under the Act. (Tr. 9-22). At Step One, the ALJ found that Vance had not engaged in substantial gainful activity since she filed her claims on May 13, 2014. (Tr. 14). At Step Two, the ALJ concluded that the following impairments qualified as severe: history of pericarditis and hypertension. (Tr. 14-15). The ALJ also decided, however, that none of these met or medically equaled a listed impairment at Step Three. (Tr. 15). Thereafter, the ALJ found that Vance had the residual functional capacity ("RFC") to perform "the full range" of light work. (Tr. 16). At Step Four, the ALJ found Vance capable of performing her past relevant work as a security guard. (Tr. 18). Having so found, the ALJ declined to proceed to Step Five.

### E. Administrative Record

#### 1. Medical Evidence

The Court has reviewed Vance's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

#### 2. Application Reports and Administrative Hearing

##### i. Function Report

On June 18, 2015, Vance filled out a Function Report which appears in the administrative record. Describing her conditions, she noted "headaches" that "caused me to lose several jobs" because "I snap," as well as "a heart disease called Pericarditis" that causes her "heart" to "hurt[] all the time." (Tr. 207). She also suffered from "muscular soft

5

tissue injury throughout my cervical, thoracic, [and] lumbar area which catches cold and causes severe back pain," as well as temporomandibular joint dysfunction "which causes pressure headaches [and] effect[s] my ability to see." (*Id.*). These conditions caused sleeping problems. (Tr. 209). "The illness has caused me to get tired very fast. I'm tired all the time. I use[d] to work out every day. The illness has caused me to be mean. Can't breathe without having shortness of breath, sit, walk, without stopping every minute. I'm snapping at people, losing jobs because of the pressure headaches." (*Id.*).

In activities of daily living, Vance spent "more than two to three hours" dressing, bathed "very slowly," spent "more than [an] hour" caring for her hair, lacked an appetite, and required "two to three hours" to mount enough energy "to move." (*Id.*). In taking the proper medications on time, she often relied on written reminders. (Tr. 210). She prepared sandwiches, fruit, vegetables, and milk or juices as a meal three times a week "because I have no appetite." (*Id.*). She performed the chores of ironing and dusting, but nothing else because "[i]t hurts when I try to sweep [and] mop . . . ." (*Id.*). Though she had a driver's license, she did not drive because "my vision is poor due to my heart [and] lung disease [and] TMJ pressure headaches." (Tr. 211). When she went shopping, she looked primarily for clothing and toiletries. (*Id.*). She remained able to pay bills, count change, handle a savings account, and use a checkbook. (*Id.*). She maintained no hobbies "other than reading the Bible [and] going to church." (Tr. 212). Aside from her trips to the chapel, she did not engage in social activities. (*Id.*). She required help doing even this when "my pressure headaches" become "extreme[]" and "my head feels like it's getting ready to explode and it's hard for me to focus." (*Id.*).

Her symptoms stirred her to anger with "anything" and "anybody," and "caused me to become depressed . . . ." (Tr. 213). Prompted to mark abilities with which she struggled, she marked: lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, seeing, memory, completing tasks, concentration, understanding, following instructions, using hands, and getting along with others. (*Id.*). These activities, she suggested, put "strain on my heart [and back] muscles." (*Id.*). She struggled paying attention and following instructions as well. (*Id.*). She had "a hard time with authority figures," and could not cope with stress. (Tr. 214).

### ii. Vance's Testimony at the Administrative Hearing

Vance opened her testimony by amending her alleged onset date to August 7, 2014. (Tr. 25-26). She noted her past work as a security guard from 1999 to 2001, which ended because "they started downsizing. And I was the last to get hired, and one of the first to get laid off." (Tr. 27). Since then, she had not worked at any job for more than a year. (*Id.*). The security job required her to sit, stand, walk, and sit, and partly for this reason she indicated she could no longer perform the work. (Tr. 27-28). In addition, she noted "I suffer a condition . . . . called severe anxiety and depressions. And the doctors are thinking about getting a MRI for me because I have constant pressure in my head, . . ." (Tr. 28). "It never goes away." (*Id.*). She relayed her psychiatrist's diagnosis of dissociative identity disorder, as well as her "tendency to snap" and "just go off." (Tr. 28-29).

She then discussed in episode in 2008 where "I almost died" due to "inflammation on my lungs and my heart," a condition for which she "was hospitalized for about a week at Receiving Hospital. That's when the doctors actually told me that I cannot be around

7

people." (Tr. 30). For this reason, she claimed a need for an office environment, and her security job provided this for her—but at the time of the hearing she could "[n]ot" do that work full time because "I have a short temper and I have a tendency to get into fights and get fired." (Tr. 31). Vance thereafter provided an overview of her medications for the ALJ. (Tr. 31-33).

In relation to her treatment at "Team Mental Health or Team Wellness as they're calling it now," Vance said "[t]hey're working on my severe depression and anxiety. Working on my insomnia. They're working on my stress because . . . I'm completely stressed. They're working on issues that's dealing with my getting along with people because I have a tendency not to get along. I have a short temper and also, I have a hard time focusing and concentrating. And I have short-term memory, as well." (Tr. 34). Vance confessed to crying "[o]ften" depending "on the situation that I'm going through," as well as to living "in a shelter around a bunch of people." (Tr. 36). Another symptom she suffered was misanthropy, to which she largely attributed her temper. (Tr. 36-38).

### iii. The VE's Testimony at the Administrative Hearing

The ALJ first asked the VE to classify Vance's past work as a security guard. (Tr. 42). The VE indicated that it was "light and semi-skilled." (*Id.*). There existed 24,000 local job availabilities and 900,000 national job availabilities for such work. The ALJ proceeded: "If we were to assume that she only can work indoors in such a position in employment, she has a number of problems we've heard today. She has significant psychiatric problems that she's explained. And pain in her knees. She has problems around her heart, she says give her chest pain, shortness of breath. And she suffers from depression, stress, anxiety,

8

which causes her to have difficulty relating to people working on a full-time job making decisions in a job such as security guard. Would she be able to go back to that job?" (Tr. 42-43). The VE said that she could not return to her job under those circumstances. (Tr. 44).

### F. Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.*. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996). Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186,

at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

> (i)  [D]aily activities;
> (ii)  The location, duration, frequency, and intensity of . . . pain;
> (iii)  Precipitating and aggravating factors;
> (iv)  The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
> (v)  Treatment, other than medication, . . . received for relief of . . . pain;
> (vi)  Any measures . . . used to relieve . . . pain.

12

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

### G.     Analysis

Vance offers three prime arguments in her appeal to this Court: (1) the ALJ failed to incorporate any mental limitations into his RFC, (Doc. 10 at ID 498); (2) the ALJ failed to find that she suffered from a 'severe' mental impairment "despite significant psychiatric treatment records documenting the contrary," (*Id.*); and (3) the ALJ inadequately evaluated her credibility. I address each argument in turn.

#### 1.     The Omission of Mental Limitations from the RFC

Vance argues that the ALJ erred in failing to incorporate any mental limitations into his RFC determination. This omission, she suggests, "is not supported by substantial evidence because the ALJ failed to acknowledge extensive psychiatric treatment records spanning August 7, 2014 through August 10, 2015 and totaling 185 pages . . . ." (Doc. 10 at ID 506). She also supposes that the ALJ "mischaracterized the record" in saying the claimant "'received little mental health treatment . . . .'" (Doc. 10 at ID 504) (quoting (Tr. 17)). In actuality, the ALJ *did* acknowledge, cite, and discuss the treatment records at issue. (Tr. 17) (describing Vance's statements as represented in her Team Wellness records, contrasting these allegations with Dr. Moten's and Dr. Hayter's psychological evaluations, and observing that "[h]er treatment is related to life stressors including the loss of her job and home eviction."); *see, e.g.*, (Tr. 268-69) (noting Vance's goal of securing permanent housing and recovering from her eviction).

Though Vance might take issue with the ALJ's statement that she received "little" mental health treatment, (Tr. 17), I do not find it so objectionable—in context, it refers to the conservative treatment schedule Vance pursued and the relative scarcity of evidence supporting the claimed severity of her mental impairments. *E.g.*, (Tr. 265, 318) (independence in activities of daily living); (Tr. 273, 287, 335, 383, 402, 415) (denoting a monthly appointment schedule); (Tr. 266-67, 333, 335, 405, 413) (calm or pleasant demeanor); *cf. Gaines v. Comm'r of Soc. Sec.*, No. 1:16-CV-12793, 2017 WL 2129686, at *12 (E.D. Mich. Apr. 25, 2017), *report and recommendation adopted sub nom. Gaines v. Soc. Sec., Comm'r of*, No. 16-CV-12793, 2017 WL 2117990 (E.D. Mich. May 16, 2017) ("I cannot divorce the context surrounding the ALJ's language . . . from the language

itself."). Even assuming the ALJ's language was ambiguous or misleading—and therefore, error—such error would be harmless because the ALJ's overall opinion plainly illustrates his consideration of Vance's mental health records. *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005) (harmless error where an ALJ's opinion indirectly fills any gaps left by a technical lack of clarity). Moreover, although Vance points to evidence in her favor—such as a number of mental diagnoses, (Doc. 10 at ID 504) (citing (Tr. 270, 411)), and two low GAF scores, (Doc. 10 at ID 505) (citing (Tr. 271, 411))—the ALJ does too, and the conclusions he reaches lie well within the "'zone of choice'" provided those in his particular position. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).

In short, substantial evidence undergirds the ALJ's decision to exclude mental health limitations from his RFC, and Vance cannot prevail on this ground.

### 2. The ALJ's Step Two Findings

Vance also argues that the ALJ erred in failing to consider any of her mental impairments 'severe' at Step Two. She contends that her mental health records handily show that her mental impairments have more than a minimal effect on her ability to do basic work activities, and that because the ALJ "failed to acknowledge" these records, remand is required. (Doc. 10 at ID 503).

"Great care should be exercised in applying the not severe impairment concept," and an adjudicator who finds at least one severe impairment should continue the sequential evaluation process. SSR 85-28, 1985 WL 56856, at *4 (S.S.A. Jan. 1, 1985). Where an ALJ finds at least one severe impairment and considers a claimant's "severe and nonsevere

15

impairments in the remaining steps of the sequential analysis," however, "[t]he fact that some of [the claimant's] impairments were not deemed to be severe at step two is legally irrelevant." *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008); *accord, e.g.*, *Albertson v. Comm'r of Soc. Sec.*, No. 15-12160, 2016 WL 5661590, at *5 (E.D. Mich. Sept. 30, 2016) ("A step two omission is of 'little consequence,' provided that the ALJ considered' all impairments, severe and nonsevere,' in crafting the RFC." (quoting *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003))); *Williams v. Comm'r of Soc. Sec.*, No. 14013677, 2015 WL 5719676, at *3 (E.D. Mich. Sept. 30, 2015) (invoking this principle). As discussed at some length above, the ALJ considered each of Vance's nonsevere impairments in explaining his RFC determination; thus, the ALJ's failure to find any of her mental impairments severe is not error and cannot undermine the ALJ's decision.

For this reason, Vance's Step-Two argument lacks merit.

### 3. The ALJ's Credibility Determination

In attacking the ALJ's credibility determination, Vance reiterates her criticism that the ALJ ignored and mischaracterized her mental health records, this time averring that such error deprives his *credibility* determination of evidentiary support. (Doc. 10 at ID 507). In particular, Vance again highlights the ALJ's statement that she "received little mental health treatment" as problematic. (*Id.*) (quoting (Tr. 17)). But as discussed above, Vance's objection takes the ALJ's language out of context, and evades mention of other factors which clearly factored into the ALJ's rationale, such as Vance's focus on "life stressors including the loss of her job and home eviction," the lack of "exacerbation or required hospitalization," and the paucity of evidence corroborating her testimony. (Tr.

16

17). The record validates his circumspection. *See, e.g.*, (Tr. 268-89, 284, 340) (noting Vance's goal was to recover from her eviction and homelessness). *Compare* (Tr. 209) (describing a habit of taking two to three hours to bathe herself, an hour to care for her hair, and two to three hours to gather enough energy simply to move), *with* (Tr. 265, 318) (independence in activities of daily living). Indeed, contrary to Vance's repeated gripe that the ALJ "failed to make one citation to any of [her] psychiatric treatment records in his decision denying benefits," (Doc. 10 at ID 507), the ALJ devoted an entire page of his decision to weighing the mental health evidence available, (Tr. 17). Substantial evidence supports his credibility determination.

### H. Conclusion

For the reasons stated above, the Court finds that the ALJ's decision is supported by substantial evidence.

## II. ORDER

In light of the above findings, **IT IS ORDERED** that Vance's Motion for Summary Judgment, (Doc. 10), is **DENIED**, the Commissioner's Motion for Summary Judgment, (Doc. 14), is **GRANTED**, and this case is **AFFIRMED**.

Date: June 26, 2017         S/ PATRICIA T. MORRIS
                            Patricia T. Morris
                            United States Magistrate Judge

### CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: June 26, 2017						By s/Kristen Castaneda
							Case Manager